UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
MONICA JARAMA, individually and on behalf :
of all others similarly situated, :
 :
                           Plaintiff, : **REPORT AND**
 : **RECOMMENDATION**
  -against- :
 : 20 Civ. 3463 (EK) (VMS)
 :
85-16 FOOD CORP. d/b/a CEVICHERIA EL :
REY, ISRAEL TELLEZ, and ROCIO RIOS, :
 :
                         Defendants. :
-------------------------------------------------------------- x

**Vera M. Scanlon, United States Magistrate Judge:**

      Plaintiff Monica Jarama ("Plaintiff" or "Jarama") brings this action against Defendants 85-16 Food Corp. d/b/a Cevicheria El Rey, Israel Rellez and Rocio Rios, on behalf of herself and all other similarly situated employees seeking, inter alia, unpaid minimum wages and liquidated damages for alleged violations of the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law ("NYLL"). See Compl., ECF No. 1. Defendants moved for summary judgment on Plaintiff's FLSA claims on the single ground that Plaintiff is not covered by the FLSA because the Defendant employer did not meet the minimum threshold of $500,000 in gross annual sales during the relevant time period. See ECF No. 50-51. Plaintiff opposed the motion. See ECF No. 52-53. Defendants replied. See ECF No. 57. The District Court referred the motion to this Court for a report and recommendation.

      As explained below, the record evidence demonstrates a dispute of material fact as to whether the Defendant employer's gross sales exceeded the $500,000 FLSA threshold, and the motion for summary judgment should be denied on the sole ground on which Defendants move. The Court therefore respectfully recommends that the District Court deny Defendants' motion.

1

If the District Court adopts this report and recommendation, within 14 days of the District Court's Order, the parties are directed to inform the Court by joint letter if they request a referral to Court-annexed mediation. The parties are informed that the Court may decide to direct them to participate in trial-ready mediation at an appropriate date. Within 30 days of any Order adopting this report and recommendation, if entered, the parties are to submit a proposed joint pretrial order consistent with the District Judge's Individual Rules.

## I. Background[1] and Procedural History

Plaintiff alleges that Defendant 85-16 Food Corp. is a business corporation organized under the laws of New York that owns and operates a restaurant/bar known as "Cevicheria El Rey" located at 85-16 Roosevelt Avenue, Jackson Heights, New York 11372 (the "Restaurant"). Compl., ECF No. 1 ¶¶ 6-7. Israel Tellez and Rocio Rios (the "Individual Defendants") are the officers and shareholders of 85-16 Food Corp.; they participate in the day-to-day operations of the Restaurant and have the authority to hire and fire employees, set rates and methods of pay, determine work schedules, supervise employees, and create and maintain employment records. Id. ¶¶ 8-9.

Plaintiff worked at the Restaurant as a dancer. She alleges that, after she was hired, Defendants never provided her with a written wage notice setting forth, among other things, her regular hourly rate of pay and corresponding overtime rate of pay.[2] Id. ¶ 19. From August 2014 through February 2020, Defendants failed to pay her proper minimum wages and failed to

---

[1] The background facts are derived from the Complaint, Defendants' Amended Answer and the docket.

[2] The parties have not discussed whether Plaintiff has standing to bring this claim under TransUnion LLC v. Ramirez, 594 U.S. ——, 141 S. Ct. 2190, 2203 (2021). This issue may need to be briefed before trial.

provide her with weekly wage statements setting forth her gross wages, deductions and net wages.  Id. ¶¶ 19-27.

Plaintiff alleges that "Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a)"; that "Plaintiff and the Collective Action Members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a)"; and that, "at least within each of the three (3) most recent years relevant hereto, 85-16 FOOD CORP. has had annual gross revenues in excess of $500,000."  Id. ¶¶ 39, 41.

Defendants move for summary judgment on Plaintiff's FLSA claims on the ground that it is undisputed that the Restaurant does not meet the FLSA's definition for an "enterprise engaged in commerce or in the production of goods for commerce" because it generated less than the threshold $500,000 in gross sales from 2017 through 2021.  See Defs. Mem., ECF No. 51, at 1. Defendants do not appear to dispute that the Restaurant meets the other part of the "enterprise" analysis, i.e., that it has "employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."  29 U.S.C. § 203(s)(1)(A)(i). Defendants request that, should the Court grant summary judgment as to Plaintiff's federal claims, it decline to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c).

## II. The Parties' Arguments

### a. Defendants' Motion

In support of their motion for summary judgment, Defendants submit profit-and-loss statements and payroll summaries produced by accountant Renzo Chumbiauca of Progresso

Accountants & Advisors.  See Defs. Ex. 1A ECF No. 50-1 at 1-3; Defs. Reply, ECF No. 57 at 1; Defs. 56.1,[3] ECF No. 58 ¶ 2.  The profit-and-loss statements show gross "Food Sales" of $288,779.68 for 2017; $252,268.45 for 2018; and $246,659.00 for 2019.  See Defs. Mem., ECF No. 51 at 1.  The payroll summaries show collective gross pay four employees of $66,370.00 for 2017; $67,080.00 for 2018; and $67,080.00 for 2019.  Defs. Aff., ECF No. 50 at 1-2; Defs. Ex. A, ECF No. 50-1 at 4-7 (ECF Pagination).  Defendants argue that based on these documents, no reasonable factfinder could conclude that the Restaurant generated $500,000 or more in gross sales for any relevant year.  See Defs. Mem., ECF No. 51 at 1.

b. **Plaintiff's Opposition**

Plaintiff opposes summary judgment, arguing that "issues of material fact are in dispute as to whether the Corporate Defendant grossed in excess of the FLSA's $500,000 doing[-]business minimum requirement."  See Plf. Opp., ECF No. 52 at 4.  Plaintiff argues that "there are disputed factual questions as to the Corporate Defendant's cash revenues" and that "based on Defendants' own inconsistent and contradictory records, and deposition testimony, it is more than plausible that a trier of fact could determine that the Corporate Defendant's gross income may have exceeded the FLSA's monetary threshold."  See id. at 4-5.

---

[3] Defendants failed to submit a statement of undisputed facts pursuant to Local Civil Rule 56.1 at the time they filed their motion for summary judgment.  See ECF No. 50-51. Defendants instead submitted the statement of undisputed facts when they filed their reply.  See ECF No. 57-58. The failure to comply with Local Civil Rule 56.1 would be a sufficient ground upon which to deny this motion.  See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."); Doe v. Nat'l Bd. of Podiatric Med. Examiners, No. 03 Civ. 4034 (RWS), 2004 WL 912599, at *3 (S.D.N.Y. Apr. 29, 2004) ("When a moving party fails to file a statement as required under Local Rule 56.1, it is within the discretion of the court to overlook that failure or to deny the motion.").  The Court addresses the merits in the interest of completeness.

In support of her opposition, Plaintiff submits evidence which she argues demonstrates that the Restaurant's "annual gross volume of sales made or business done is not less than $500,000." See U.S.C. 29 § 203(s)(1)(A)(ii); Cilenti Decl., Ex. A-F, ECF Nos. 53-1 to 53-6. Plaintiff argues that Defendants' profit-and-loss statements and payroll summaries underreport the corporate Defendant's finances in four ways: (1) they fail to include salaries for "off-the-books" employees; (2) they fail to include "house pay" for dancers; (3) they understate the amount of commissions realized by the corporation; and (4) they understate the corporation's other expenses. Plf. Opp., ECF No. 52 at 8-15.

### i. Beer And Wine Sales

Plaintiff offers evidence which, if found credible, would prove that the Restaurant's records do not account for commissions that it earned from beer and wine that customers bought for the dancers employed at the Restaurant, which comprised "Defendants' entire business model." Plf. Opp., ECF No. 52 at 11-12. Defendant Israel Tellez, who was formerly employed at the Restaurant, testified that between 2017 and 2019, "between eight and fifteen dancers would perform at the [R]estaurant during the week, and approximately eighteen dancers on Friday and Saturday nights." See id. at 11; Cilenti Decl., Ex. D ("Tellez Dep."), ECF No. 53-4 at 47-48. Mr. Tellez testified about the Restaurant's practice of splitting beer and wine revenues between the dancers and the Restaurant. As Plaintiff states in her opposition,

> Defendants established a commission-based system whereby for each drink that the customer purchased for the dancers, typically half of the purchase price would be kept by the restaurant and the other half would be kept by the dancer. Thus, for example, if the customer purchased a large beer or glass of wine for the dancer for $20, the dancer kept $10, and the house kept the other $10.[4]

---

[4] Mr. Tellez testified as follows regarding large beer and wine revenues:

5

<u>Id.</u> at 12 (citing Tellez Dep., ECF No. 53-4 at 51-53).  Mr. Tellez testified that for small drinks, which cost $12, the dancer would receive $7 and the Restaurant would receive $5.[5]  <u>See</u> Tellez Dep., ECF No. 53-4 at 52-53.  Mr. Tellez estimated that, under this arrangement, a dancer would typically receive $250-300 in commissions from drink sales during a weekend shift,[6] and

---

> Q: Okay. So if a customer wanted to buy a large beer for the girl, how much would you charge for that?
>
> A: $20.
>
> Q: How much would your house keep and how much would you [sic] girl keep?
>
> A: Half, $10 and $10.

<u>See</u> Tellez Dep., ECF No. 53-4 at 51-52.

[5] Mr. Tellez testified as follows regarding small beer and wine revenues:

> Q: If the customer wanted to buy the girl a small beer, how much would you charge them?
>
> A: $12 dollars, seven for the girl and five for the house.

<u>See</u> Tellez Dep., ECF No. 53-4 at 52-53.

[6] Mr. Tellez testified as follows regarding Friday and Saturday night beer and wine revenues:

> Q: What I'm really ask [sic] you is how much would a girl typically receive from the house for the drinks that she made on a weekend night?
>
> A: Okay, so around at [sic] estimate $250 to $350.

<u>See</u> Tellez Dep., ECF No. 53-4 at 54.

> Q: So the $250 assuming they made the $250-350 hours [sic] for instance on a Saturday-night [sic], that means that the house made the same or virtually the same because they were splitting the commission with the girl, right?
>
> A: Yes, I mean if the girl made it, yes, if not, no.

6

between $40 and $60 during a weekday shift.[7]  See id. at 53-56.  Plaintiff argues that, based on Mr. Tellez's estimates, it is reasonable to believe that the Restaurant had $10,600 to $15,000 in sales per week, and between $551,220 and $780,000 per year, solely in beer and wine sales generated through the commission arrangement.  See Plf. Opp., ECF No. 52 at 12-13.  As revenue includes all incoming payments before costs, and the Tellez deposition put the Restaurant's half of the arrangement between $551,220 and $780,000, if Mr. Tellez's testimony is credible, there is evidence that the associated annual revenue would have been between $1,102,440 and $1,560,000.  See id. at 13.  That half of this revenue may have gone to the dancers does not mean that it does not count as annual sales by the Restaurant.

## ii.  "Off-The-Books" Salaries

Plaintiff offers evidence which, if found credible, demonstrates that the payroll summaries fail to account for at least six "off-the-books" employees.  Plf. Opp., ECF No. 52 at 8-11.  Mr. Tellez testified that Rodrigo Hernandez, Aurelio Recendiz, Maximo Perez and individuals he only knew as "Javier," "Antonio" and "Carlos," all worked at the Restaurant during the relevant time period.  Tellez Dep., ECF No. 53-4 at 20, 22, 25.  Plaintiff argues that Mr. Tellez's testimony confirms that together, these employees earned over $80,000.00

---

[7] Mr. Tellez testified as follows regarding weeknight beer and wine revenues:

> Q: And roughly if they made about $250 to $350 per night on the weekend on average, again, estimating, how much would a girl normally make during a week, a weekday night?
>
> A: $60, I don't know, $60 per night. I mean what do you know [sic] by weekdays, are you saying like three days.
>
> Q: I'm saying Monday to Thursday?
>
> A: Yes, $50, $40, like something like that.

7

annually—an amount not accounted for in the profit-and-loss statements, payroll summaries or tax returns. Plf. Opp., ECF No. 52 at 10. Instead, the 2017-2019 profit-and-loss statements and tax returns only account for the gross salaries of the four "on-the-books" employees identified in the payroll summaries. See id.; Cilenti Decl., Ex. A, ECF No. 53-1; Ex, B, ECF No. 53-2; Ex. C, ECF No. 53-3.

### iii. "House Pay" For Dancers

Plaintiff offers evidence which, if found credible, demonstrates that the 2017-2019 financial records do not account for "house pay" for dancers. See Plf. Opp., ECF No. 52 at 11. Mr. Tellez testified that dancers earned $30 per shift. See Tellez Dep., ECF No. 53-4 at 46. Plaintiff estimates, based on Mr. Tellez's testimony, that the Restaurant paid "between approximately $118,560 and $173,160 in annual 'house pay' paid to its dancers," and that these amounts are not accounted for in the Restaurant's financial records or tax returns. See Plf. Opp., ECF No. 52 at 11. As to the house pay and six off-the-books workers, Plaintiff deduces that the gross sales had to be high enough to cover these expenses, which were at least $198,560, as well as all other expenses. See Plf. Opp., ECF No. 52 at 14.

### iv. Other Expenses And Inconsistencies

Plaintiff argues that Defendants' records and tax returns underreport expenses that are reflected in other documents, including rental expenses, wine and beer purchases and food supply purchases. See id. at 13-14. Plaintiff also argues that Defendants' monthly bank statements from 2018 and 2019 show more than the gross sales on Defendants' tax returns and profit-and-loss statements. Id. at 14.

### c. Defendants' Reply

In reply, Defendants dispute Plaintiff's contention that the drink commissions are not reflected in the profit-and-loss statements, but they do not respond to the argument that Mr. Tellez's testimony suggests that the statements understate the Restaurant's gross sales. See Plf. Reply, ECF No. 57 at 1-2. Defendants also argue that the expenses discussed in Plaintiff's opposition "radically decrease Defendants' gross annual income." Id. at 3.

## III. Legal Standards

### a. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "It is the movant's burden to show that no genuine factual dispute exists," and a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the movant has met its burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and must instead "set forth specific facts showing that there is a genuine issue for trial," First Nat'l Bank of Az. v. Cities Serv. Co., 391 U.S. 253, 288 (1968). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005).

9

The non-movant may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Fed. Trade Comm'n v. Moses, 913 F.3d 297, 305 (2d Cir. 2019) (citation omitted). "Something more than a fanciful allegation is required to justify denying a motion for summary judgment when the moving party has met its burden of demonstrating the absence of any genuine issue of material fact." Gordon v. Gen. Prop. Mgmt. Assocs., Inc., 496 F. Supp. 3d 830, 835 (S.D.N.Y. 2020) (quoting Contemporary Mission v. United States Postal Serv., 648 F.2d 97, 107 (2d Cir. 1981)). "A 'bare assertion' that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f)." Contemporary Mission, 648 F.2d at 107. A district court "must ask not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Simpson v. City of N.Y., 793 F.3d 259, 265 (2d Cir. 2015).

### b. FLSA Coverage

In order to establish that an employer is liable for FLSA minimum wage violations, a plaintiff must demonstrate that she is a covered employee by showing that she is either "engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). The plaintiff bears the burden of establishing FLSA coverage. See Jian Long Li v. Li Qin Zhao, 35 F. Supp. 3d 300, 305 (E.D.N.Y. 2014); Benitez v. F & V Car Wash, Inc., No. 11 Civ. 01857 (DLI) (SMG), 2012 WL 1414879, at *1 (E.D.N.Y. Apr. 24, 2012) ("after review of recent case law in this Circuit" concluding "that the question of whether a defendant qualifies as an enterprise under the FLSA is not a jurisdictional issue, but an element that a plaintiff must establish in order to prove liability") (collecting cases). If a defendant employer moves for

10

summary judgment on the basis of a plaintiff's coverage under the statute, the plaintiff "can survive summary judgment by demonstrating that there is a genuine dispute of material fact regarding the plaintiff's coverage." Bin Gao v. Jian Song Shi, No. 18 Civ. 02708 (ARR) (JO), 2019 WL 3936810, at *4 (E.D.N.Y. Aug. 20, 2019).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and ... [whose] annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i)-(ii). Under an enterprise-coverage theory, "a plaintiff need not himself or herself be involved in an activity which affects interstate commerce," so long as "the gross volume requirement is met," and some of the employer's employees "are (1) engaged in commerce, (2) engaged in the production of goods for commerce, or (3) engaged in handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce." Yahui Zhang v. Akami, No. 15 Civ. 4946 (VSB), 2019 WL 4688702, at *3 (S.D.N.Y. Sept. 25, 2019) (quoting Archie v. Grand Cent. P'ship, Inc., 997 F. Supp. 504, 528 (S.D.N.Y. 1998)).

An employer may put forth tax returns or other financial documents to demonstrate its gross volume of sales or business done. See, e.g., Yahui Zhang v. Akami, No. 15 Civ. 4946 (VSB), 2019 WL 4688702, at *5 (S.D.N.Y. Sept. 25, 2019) (dismissing FLSA claims based on tax returns showing that the employer "did not meet the FLSA statutory threshold of $500,000 in gross annual volume of sales" and a declaration "averring that [the tax returns were] authentic and accurate"); Yupa v. Country Stone & Fence Corp., No.14 Civ. 7384 (DRH), 2017 WL 27957, at *4 (E.D.N.Y. Jan. 3, 2017) (holding that where tax returns recite the amount of "gross

11

receipts or sales," and where there is no evidence suggesting the tax returns are inaccurate, the "submitted tax returns are sufficient to establish the [employer's] annual gross revenue"); see also 29 C.F.R. § 779.266(b) (permitting the use of tax returns in computing annual sales volume). Tax returns and other financial documents are not conclusive evidence of gross annual sales if sworn testimony suggests that the documents understate the employer's sales, such that the actual sales are over the $500,000 threshold. With such evidence, summary judgment as to enterprise coverage may be precluded. See, e.g., Bin Gao, 2019 WL 3936810, at *6 (denying employer's summary judgment motion where deposition testimony contradicted employer's unsigned tax returns purportedly showing that the employer did not meet the $500,000 threshold); Rocha v. Bakhter Afghan Halal Kababs, Inc., 44 F. Supp. 3d 337, 348 (E.D.N.Y. 2014) (denying employer's summary judgment motion where the plaintiffs' sworn statements contradicted unsigned tax returns not accompanied by an affidavit by the tax preparer or business owner); Monterossa v. Martinez Rest. Corp., No. 11 Civ. 3689 (JMF), 2012 WL 3890212, at *4 (S.D.N.Y. Sept. 7, 2012) (plaintiff employees' testimony that restaurant grossed $2,000-5,000 per day, even if "self-serving or otherwise inaccurate," was sufficient to contradict unsworn tax returns and to create a material dispute of fact); Garcia v. Serpe, No. 3:08 Civ. 1662 (VLB), 2012 WL 380253, at *7 (D. Conn. Feb. 6, 2012) (denying summary judgment motion based on a material dispute of fact as to whether the $500,000 threshold was met where plaintiff employees submitted deposition testimony evidence "demonstrating that the [d]efendant LLCs significantly understated their income on their tax returns").

## IV. Application

Defendants' summary judgment motion should be denied because there is a material dispute of fact as to the only ground on which Defendants moved, namely, whether the

Restaurant's "annual gross volume of sales made or business done" was $500,000 or more during the relevant years. See U.S.C. 29 § 203(s)(1)(A)(ii). Although Plaintiff calls attention to the inaccuracy of Defendants' financial documents by identifying inconsistencies and off-the-books expenses, see Plf. Opp., ECF No. 52, at 8-15, a serious material factual dispute is created by Mr. Tellez's testimony regarding the Restaurant's beer and wine sales, see Part II(b)(i), supra. His testimony is sufficient to create a dispute of fact as to an element of FLSA enterprise coverage such that summary judgment cannot be granted.

Defendants argue that enterprise coverage does not exist because the Restaurant "grossed far less than $500,000.00 from 2017 through and including 2021." See Defs. Mem., ECF No. 51 at 1. Defendants rely on the profit-and-loss statements and payroll summaries to support this position. See id.; Joseph Aff., ECF No. 50. Defendants argue that the profit-and-loss statements accurately account for the Restaurant's annual alcoholic beverage sales. See Defs. Reply, ECF No. 57 at 1-2. Defendants did not provide "a declaration from a person with knowledge of the records, averring that they are authentic and accurate." See Yahui Zhang, 2019 WL 4688702, at *5. Even if Defendants had provided such a document, Plaintiff would dispute the accuracy of the profit-and-loss statements by arguing that Mr. Tellez's testimony indicates that the statements significantly understate the Restaurant's gross annual sales based on the evidence cited above. See Part II(b), supra.

The Court agrees with Plaintiff. As discussed in Part II(b), supra, Mr. Tellez testified that, during the relevant time periods, between 17-18 dancers would work at the Restaurant on Friday and Saturday nights. See Tellez Dep., ECF No. 53-4 at 47-48. Mr. Tellez testified that each dancer would typically earn approximately $250-350 per Friday and Saturday night shift in drink commissions. See id. at 54-55. It is reasonable to infer, based on the approximately 50-50

13

split described by Mr. Tellez, that the Restaurant would have generated between $500 and $700 in drink revenues per dancer on Friday and Saturday nights before paying commissions to the dancers. Considering that there were 104 Friday and Saturday nights per year, and assuming 17 dancers worked per Friday and Saturday night (the lower number in Mr. Tellez's estimate), the Restaurant would have grossed $884,000 in annual sales on Friday and Saturday beer and wine sales alone. This easily clears the $500,000 enterprise coverage threshold. If the higher estimate of Mr. Tellez's testimony is found credible (18 dancers per weekend night; $350 in beer and wine commissions per dancer), a factfinder could reasonably determine that the restaurant generated $1,310,400 per year in Friday and Saturday alcohol sales.

Factoring in Sunday through Thursday nights[8] to the sales calculation further undermines Defendants' position. Mr. Tellez testified that approximately 8-15 dancers would typically per night (excluding Fridays and Saturdays, during which he estimated 17-18 dancers would work), and that each dancer would make approximately $40-60 in drink commissions Monday through Thursday. See id. at 47-48, 56. Using the lower of these estimates, Mr. Tellez's testimony supports the conclusion that the Restaurant generated at least $640 in gross beer and wine sales per night, Sunday through Thursday, approximately half of which would be paid to the dancers as commissions. See id. at 55-56. Assuming that the restaurant was open 261 Sunday through

---

[8] Mr. Tellez's testimony is unclear as to the number of dancers that would work on Sunday nights. He estimated that 17-18 dancers worked on "Friday and Saturday nights," but that 8-15 dancers would work per night on average. See Tellez Dep., ECF No. 53-4 at 47-48. He later responded affirmatively when asked whether "each girl would make at the end of Friday night, a Saturday night, or a Sunday night just on the alcohol from the house that was paid by the house was [sic] about $250, to $350." See id. at 54. Because the Court finds an issue of fact as to whether the $500,000 threshold was met regardless of whether Sunday revenues matched Friday and Saturday revenues, the Court has excluded Sundays from the "weekend," i.e., Friday and Saturday night, calculations.

14

Thursday nights per year, this would have resulted in $167,040 in Sunday through Thursday drink sales per year. Combining weekdays and weekends, Mr. Tellez's testimony supports the argument that the Restaurant generated over $1 million in gross drink sales per year.

There is a clear discrepancy between the gross sales set forth in the profit-and-loss statements and the gross sales according to Mr. Tellez's testimony. Defendants did not offer testimony to dispute Mr. Tellez's estimates. Thus, the record evidence establishes a genuine dispute as to the Restaurant's gross sales and shows that they may well have been over $500,000 per year. By extension, there is a genuine dispute of fact as to whether FLSA enterprise coverage applies.

## V. Conclusions

For the foregoing reasons, this Court respectfully recommends that the District Court deny Defendants' motion for summary judgment.

## VI. Objections

This report and recommendation will be filed electronically. Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any request for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (stating that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a

15

magistrate's recommended decision, it waives any right to further review of that decision") (internal citation & quotations omitted).

  If the District Court adopts this report and recommendation, within 14 days of the District Court's Order, the parties are directed to inform the Court by joint letter if they request a referral to Court-annexed mediation.  The parties are informed that the Court may decide to direct them to participate in trial-ready case mediation at an appropriate date.  Within 30 days of any Order adopting this report and recommendation, if entered, the parties are to submit a proposed joint pretrial order consistent with the District Judge's Individual Rules.

Dated: Brooklyn, New York
   August 21, 2023

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge